# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

BRIAN WRIGHT,

      Plaintiff,

vs.

NEVENS, et al.,

      Defendants.

3:08-CV-243-LRH (RAM)

**REPORT AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE**

This Report and Recommendation is made to the Honorable Larry R. Hicks, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR IB 1-4. Before the court is Defendants' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment. (Doc. #37.)[1] Plaintiff has opposed (Doc. #45), and Defendants have replied (Doc. #47). Also before the court is Defendant Isidro Baca's Motion for Summary Judgment. (Doc. #49.) Plaintiff has opposed (Doc. #62), and Defendant Baca has replied (Doc. #67). After a thorough review, the court recommends that Defendants' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment should be granted.

## I. BACKGROUND

Plaintiff Brian Wright is currently in the custody of the Nevada Department of Corrections (NDOC) as an inmate at Nevada State Prison. However, the events at issue occurred while Plaintiff was an inmate at High Desert State Prison (HDSP). (Pl.'s Second Am. Compl. 1 (Doc. #22).) Plaintiff, a *pro se* litigant, brings this action pursuant to 42 U.S.C. §

---

[1] Refers to court's docket number.

1983. On March 19, 2009, Plaintiff filed his second amended complaint seeking damages against Isidro Baca, Dahn Shaulis, and Mr. Reabart[2] in their individual capacities. (*Id.* at 2, 9.)

Plaintiff's claims center on his transfer from HDSP to the Lovelock Correctional Center (LCC). According to Plaintiff, he alerted Defendants via written correspondence that he had enemies at LCC and that his life would be in immediate danger if he were transferred to LCC. (*Id.* at 3.) Plaintiff alleges that after being transferred to LCC, he was stabbed in the back by the same inmate he told Defendants was his enemy. (*Id.* at 4-5.)

In Count I, Plaintiff claims that Defendant Shaulis deliberately disregarded a substantial risk of serious harm by transferring Plaintiff to LCC in violation of the Eighth and Fourteenth Amendments. (*Id.* at 4.)

In Count II, Plaintiff alleges that Defendant Baca deliberately disregarded a substantial risk of serious harm by transferring Plaintiff to LCC in violation of the Eighth and Fourteenth Amendments.[3] (*Id.* at 5.)[4]

---

[2] In an order issued January 25, 2010, the court dismissed Defendant Reabart without prejudice. (Doc. #69.)

[3] Aside from mentioning "due process" twice in his complaint, Plaintiff does not make any other allegations implicating a procedural due process claim or a substantive due process claim. To the extent Plaintiff states a procedural due process claim, he fails to assert a liberty interest in either remaining at a particular institution, *see Meachum v. Fano*, 427 U.S. 215, 224 (U.S. 1976), or because the transfer "impose[d] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). To the extent Plaintiff states a substantive due process claim, his claim regarding his transfer is more appropriately analyzed under the Eighth Amendment. "[W]here a particular amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing a plaintiffs claims." *Patel v. Penman*, 103 F.3d 868, 874 (9th Cir. 1996) (citations, internal quotations, and brackets omitted), *overruled in part on other grounds as recognized by Nitco Holding Corp. v. Boujikian*, 491 F.3d 1086 (9th Cir. 2007).

[4] Before turning to the merits of the instant motions, the court must address some confusion introduced by Defendants' filings. In the motion filed August 28, 2009, only Defendant Baca moved for summary judgment. (Doc. #49.) However, the reply (Doc. #67) and the supplement to the reply (Doc. #68) were filed on behalf of both Defendant Baca and Defendant Shaulis. In looking at the substance of all the briefing related to the motion for summary judgment, it appears the motion was intended to be brought on behalf of both Defendant Baca and Defendant Shaulis. Most importantly, Plaintiff submits evidence and makes argument in his opposition relevant to Defendant Shaulis, indicating that he was on notice of the need to bring forth evidence to oppose summary judgment as to Defendant Shaulis. Thus, the court considers the evidence submitted by defense counsel as it

## II. LEGAL STANDARD

In general, if a district court considers evidence outside the pleadings when ruling on a Rule 12(b)(6) motion to dismiss, the motion will be treated as one for summary judgment. Fed. R. Civ. P. 12(d). In ruling on Defendants' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment, the court considers evidence outside the pleadings; thus, the motion will be treated as one for summary judgment.

The purpose of summary judgment is to avoid unnecessary trials when there is no dispute over the facts before the court. *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). All reasonable inferences are drawn in favor of the non-moving party. *In re Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 244 (1986)). Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Id.* (citing Fed.R.Civ.P. 56(c)). Where reasonable minds could differ on the material facts at issue, however, summary judgment is not appropriate. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995), *cert. denied*, 516 U.S. 1171 (1996). In deciding whether to grant summary judgment, the court must view all evidence and any inferences arising from the evidence in the light most favorable to the nonmoving party. *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996). In doing so, the court must defer to the professional judgment of prison administrators when an inmate civil rights complaint is involved. *Beard v. Banks*, 548 U.S. 521, 526, 530 (2006); *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003).

The moving party bears the burden of informing the court of the basis for its motion, together with evidence demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden,

---

relates to Defendant Shaulis even though the initial motion erroneously indicated that the motion was filed only on behalf of Defendant Baca.

the party opposing the motion may not rest upon mere allegations or denials of the pleadings, but must set forth specific facts showing there is a genuine issue for trial. *Anderson,* 477 U.S. at 248. Although the parties may submit evidence in an inadmissible form, only evidence which might be admissible at trial may be considered by a trial court in ruling on a motion for summary judgment. Fed. R. Civ. P. 56(c).

In evaluating the appropriateness of summary judgment, three steps are necessary: (1) determining whether a fact is material; (2) determining whether there is a genuine issue for the trier of fact, as determined by the documents submitted to the court; and (3) considering that evidence in light of the appropriate standard of proof. *Anderson*, 477 U.S. at 248. As to materiality, only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment; factual disputes which are irrelevant or unnecessary will not be considered. *Id.* Where there is a complete failure of proof concerning an essential element of the nonmoving party's case, all other facts are rendered immaterial, and the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323.

### III. DISCUSSION

Under the Eighth Amendment, prison conditions should not "involve the wanton and unnecessary infliction of pain" or be "grossly disproportionate to the severity of the crime warranting imprisonment." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Although prison conditions may be, and often are, restrictive and harsh, prison officials "must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)(quoting *Hudson v. Palmer*, 486 U.S. 517, 526-27 (1984)).

Prison officials have a duty to protect prisoners from violence at the hands of other prisoners. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). However, not "every injury suffered by one prisoner at the hands of another … translates into constitutional liability for prison

4

1 officials responsible for the victim's safety." *Id*. at 834. To establish an Eighth Amendment
2 violation, a prisoner must show that (1) the deprivation alleged is "objectively, sufficiently
3 serious," and (2) prison officials were "deliberately indifferent" to serious threats to the
4 inmate's safety. *Id*; *Hearns v. Terhune*, 413 F.3d 1036, 1040 (9th Cir. 2005). "Deliberate
5 indifference entails something more than mere negligence . . . [but] is satisfied by something
6 less than acts or omissions for the very purpose of causing harm or with knowledge that harm
7 will result." *Hearns*, 413 F.3d at 1040 (quoting *Farmer*, 511 U.S. at 835). A prison official must
8 "[know] of and [disregard] an excessive risk to inmate ... safety; the official must both be aware
9 of facts from which the inference could be drawn that a substantial risk of serious harm exists,
10 and he must also draw the inference. " *Farmer*, 511 U.S. at 837. To show a prison official's
11 knowledge of the risk, a prisoner may rely on circumstantial evidence arising from the "very
12 fact that the risk was obvious." *Id*. at 842. "Mere negligence is not sufficient to establish
13 liability." *Frost*, 152 F.3d at 1128. Prison officials may avoid liability by: (1) proving they were
14 unaware of the risk, or (2) proving they "responded reasonably to the risk, even if the harm
15 ultimately was not averted." *Farmer*, 511 U.S. at 844.

**A.   Defendant Baca**

In Count II, Plaintiff alleges that Defendant Baca deliberately disregarded a substantial risk of serious harm by allowing Plaintiff to be transferred to LCC in violation of the Eighth Amendment. (Pl.'s Second Am. Compl. 5.) Plaintiff asserts that he sent forms to Defendant Baca alerting him to the risk Plaintiff faced from an enemy at LCC. (Pl.'s Opp. to Baca's Motion for Summ. J. 9 (Doc. #62).)

Defendants argue that Plaintiff fails to show that Defendant Baca personally participated in Plaintiff's alleged constitutional deprivation. (Baca's Mot. for Summ. J. 13 (Doc. #49).)

A claim brought under 42 U.S.C. § 1983 requires a specific relationship between the actions of the defendants and the deprivation alleged to have been suffered by plaintiff. *See Monell v. Dep't of Social Servs.*, 436 U.S. 658 (1978); *Rizzo v. Goode*, 423 U.S. 362 (1976). The

5

Ninth Circuit has held that "[a] person 'subjects' another to the deprivation of a constitutional right, within the meaning of §1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).

Plaintiff submits four "Inmate Request Forms" as evidence of Defendant Baca's knowledge of the risk faced by Plaintiff at LCC. (Pl.'s Opp. to Baca's Mot. for Summ. J. 12-15.) Plaintiff contends that the form stamped "AWP" and "AWO" indicates that Defendant Baca saw the form and stamped it himself. (*Id.* at 8.) At the time period at issue, Defendant Baca was employed as the Associate Warden of Operations, which presumably corresponds to the "AWO" stamp. (Baca's Reply 5 (Doc. #67).) Even though the form Plaintiff submits was received by the "AWO Office," this evidence fails to show that Defendant Baca, himself, received the form or had knowledge of its contents. Plaintiff indicated on the form that he was requesting the form to be sent to "Associate Warden Shaulis." (Pl.'s Opp. to Baca's Mot. 8.) Neither the receiving staff signature nor the responding staff signature are Defendant Baca's. Furthermore, none of the other "Inmate Request Forms" demonstrate that Defendant Baca received them or had knowledge of their contents. Thus, Plaintiff fails to supply evidence demonstrating that Defendant Baca personally participated in knowingly disregarding an excessive risk to Plaintiff's safety.

Moreover, to the extent that Plaintiff has attempted to sue Defendant Baca under a theory of supervisory liability, Plaintiff has not alleged sufficient facts to state a claim. Supervisory personnel are generally not liable under § 1983 for the actions of their employees under a theory of respondeat superior. When a named defendant holds a supervisory position, the causal link between him and the claimed constitutional violation must be specifically alleged. *See Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979); *Mosher v. Saalfeld*, 589 F.2d 438, 441 (9th Cir. 1978), *cert. denied*, 442 U.S. 941 (1979). Plaintiff must allege facts indicating that a supervisory defendant either: personally participated in the alleged deprivation of

constitutional rights; knew of the violations and failed to act to prevent them; or promulgated or implemented a policy "so deficient that the policy itself is a repudiation of constitutional rights" and is "the moving force of the constitutional violation." *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Plaintiff has failed to allege or demonstrate any facts against Defendant Baca to state a claim for a constitutional violation or for supervisory liability. Therefore, Defendant Baca should be granted summary judgment on Count II.

**B.    Defendant Shaulis**

In Count I, Plaintiff claims that Defendant Shaulis deliberately disregarded a substantial risk of serious harm by allowing Plaintiff to be transferred to LCC in violation of the Eighth Amendment. (Pl.'s Second Am. Compl. 4.) Plaintiff contends that he sent "Inmate Request Forms" to Defendant Shaulis on May 20, 2007, and May 24, 2007, advising Defendant Shaulis of the danger Plaintiff faced at LCC because of an enemy. (*Id*.)

Defendants argue that Plaintiff fails to present evidence that Defendant Shaulis was deliberately indifferent. (Defs.' Mot. for Summ J. 13-14 (Doc. #37).)

Plaintiff listed specific individual inmates as enemies at his initial classification with the NDOC on May 7, 2007. (*Id*. at 2.) The enemies Plaintiff identified on this date were housed at High Desert State Prison and Ely State Prison. (*Id*.) On May 20, 2007, Plaintiff filled out an "Inmate Request Form" indicating an additional enemy (May 20 Request Form).[5] (Pl.'s Opp. to Baca's Mot. 15.) On the May 20 Request Form, Plaintiff indicated that the form should be delivered to "Caseworker." (*Id*.) On May 22, 2007, Defendant Shaulis listed the additional enemy contained in the May 20 Request Form. On May 24, 2007, Plaintiff filled out another "Inmate Request Form" stating that he could not be transferred to LCC because of other

---

[5] Although Plaintiff listed two enemies in the May 20 Request Form, one of the named individuals was already identified as Plaintiff's enemy. Thus, Plaintiff's May 20 Request Form named one new enemy. (Defs.' Mot. for Summ. J., Ex. A at 1.)

7

enemies (May 24 Request Form). (Pl.'s Opp. to Baca's Mot. 12.) Plaintiff indicated on the May 24 Request Form that the form should be delivered to "Associate Warden Shaulis." (*Id.*) On July 19, 2007, Plaintiff filled out an "Inmate Request Form" again reiterating that he could not be transferred to LCC because of enemies (July 19 Request Form). (*Id.* at 14.) Plaintiff identified two individuals by name as enemies in the July 19 Request Form. On the July 19 Request Form, Plaintiff indicated that the form should be delivered to "Caseworker." (*Id.*) Plaintiff was transferred from HDSP to LCC on August 30, 2007. (Defs.' Mot. for Summ. J. 3.) Plaintiff was placed in the General Population. (*Id.*) The entry in Plaintiff's file corresponding to his intake at LCC indicates that Plaintiff "claims no problems going to GP." (*Id.*, Ex. A. at 2.) On February 14, 2008, Plaintiff was assaulted by one of the inmates he identified as an enemy in the July 19 Request Form. (*Id.*) On February 21, 2008, Plaintiff was treated for two pin point puncture wounds to his back resulting from the February 14, 2008, incident. (*Id.*, Ex. B. at 2.)

First, Plaintiff submits evidence showing he may have suffered an objectively, sufficiently serious deprivation. He asserts that Defendant Shaulis put him at a substantial risk by allowing him to be transferred to LCC where he had an enemy. (Pl.'s Second Am. Compl. 4.) Defendant Shaulis does not directly address this prong of the deliberate indifference analysis. However, Defendant Shaulis seems to suggest, but does not explicitly argue, that Plaintiff did not face a substantial risk at LCC because Plaintiff failed to file grievances regarding his transfer and, upon arrival at LCC, indicated he did not have problems going to the general population. (Defs.' Mot. for Summ. J. 14.) Plaintiff's four "Inmate Request Forms" all indicate that he believed he would be harmed by an enemy at LCC. Thus, whether Plaintiff faced a substantial risk of serious harm remains factually disputed.

Second, Plaintiff produces evidence sufficient to raise a genuine issue of material fact as to whether Defendant Shaulis was deliberately indifferent to a serious threat to Plaintiff's safety. In both the May 24 Request Form and the July 19 Request Form, Plaintiff stated that

8

1 he could not be transferred to LCC because of the risk he faced from an enemy inmate. As with
2 the May 20 Request Form, the July 19 Request Form was designated to be delivered to
3 "Caseworker." Defendant Shaulis received the May 20 Request Form and noted the additional
4 enemy identified by Plaintiff.  Thus, because the July 19 Request Form was designated to be
5 delivered in exactly the same way, it raises the inference that Defendant Shaulis received it as
6 well.  As evidence that he did not receive the July 19 Request Form, Defendant Shaulis submits
7 his affidavit stating that he was hospitalized on numerous days in July, and that he resigned
8 from his employment with the NDOC "on or about July 18, 2007." (Supp. to Reply Ex. A (Doc.
9 #68).)  This evidence removes the possibility that Defendant Shaulis received the July 19
10 Request Form, but fails to address his possible receipt of the May 24 Request Form. Unlike the
11 May 20 Request Form and the July 19 Request Form, the May 24 Request Form is specifically
12 designated to be delivered to Defendant Shaulis.  If a request form merely designated to be
13 delivered to "Caseworker" was received by Defendant Shaulis, it seems likely that a request
14 form designated to him by name would also be received.  Thus, Plaintiff presents evidence
15 sufficient to create an issue of fact as to whether Defendant Shaulis received the May 24
16 Request Form and had knowledge of an excessive risk to Plaintiff that he disregarded.

17 **C.    Qualified Immunity**

18    Defendant Shaulis argues he is entitled to qualified immunity because Plaintiff cannot
19 demonstrate he engaged in any unlawful conduct. (Defs.' Mot. for Summ. J. at 10.)  Even if
20 Plaintiff establishes a constitutional deprivation, Defendant Shaulis contends that it would not
21 be clear to a reasonable officer that Plaintiff's transfer to LCC was either unlawful or a
22 constitutional violation because no enemies were listed for Plaintiff at LCC.  (*Id.* at 11.)

23    "[Q]ualified immunity protects government officials from liability for civil damages
24 insofar as their conduct does not violate clearly established statutory or constitutional rights
25 of which a reasonable person would have known." *Pearson v. Callahan*, 129 S. Ct. 808, 815
26 (2009)(citation and internal quotations omitted).  Under certain circumstances, state officials

9

1  are entitled to qualified immunity when sued in their personal capacities.  *Carey v. Nev.*
2  *Gaming Control Bd.*, 279 F.3d 873, 879 (9th Cir. 2002).  When a state official reasonably
3  believes his or her acts were lawful in light of clearly established law and the information they
4  possessed, the official may claim qualified immunity.  *Hunter v. Bryant*, 502 U.S. 224, 227
5  (1991) (per curiam); *Orin v. Barclay,* 272 F.3d 1207, 1214 (9th Cir. 2001).  Where "the law did
6  not put the officer on notice that his conduct would be clearly unlawful, summary judgment
7  based on qualified immunity is appropriate." *Saucier v. Katz*, 533 U.S. 194, 202 (2001).

8        In analyzing whether the defendant is entitled to qualified immunity, the court must
9  consider two issues.  The court must determine whether the plaintiff alleges a deprivation of
10 a constitutional right, assuming the truth of his factual allegations, and whether the right at
11 issue was "clearly established" at the time of defendant's alleges misconduct.  *Clouthier v.*
12 *County of Contra Costa*, 2010 U.S. App. LEXIS 884, *13 (9th Cir. Jan. 14, 2010)(quoting
13 *Pearson*, 129 S. Ct. at 816). "Whether a right is clearly established turns on the 'objective legal
14 reasonableness of the action, assessed in light of the legal rules that were clearly established
15 at the time it was taken.'" (*Id.*)(quoting *Pearson*, 129 S. Ct. at 822).

16       The court finds that an Eighth Amendment claim is presented under the facts alleged
17 by Plaintiff.

18       Defendant Shaulis contends Plaintiff's failure to file grievances regarding his transfer
19 and his indication upon arrival at LCC that he did not have problems going to the general
20 population demonstrates that Defendant Shaulis could reasonably assume that Plaintiff did not
21 face a substantial risk of harm.  (Defs.' Mot. for Summ. J. 11-12.) )

22       The determination of whether the rights of prisoners were clearly established at the time
23 of an incident "must be taken in light of the specific context of the case." *Saucier v. Katz*, 533
24 U.S. 194, 201 (2001).  To be clearly established, "[t]he contours of the right must be sufficiently
25 clear that a reasonable official would understand that what [the official] is doing violates the
26 right." *CarePartners LLC v. Lashway*, 545 F.3d 867, 882 (9th Cir. 2008)(quoting *Saucier*, 533

U.S. at 202).

At the time periods in question in this case, the law was clearly established that a prison official could not disregard a substantial risk of serious harm to an inmate of which he was aware and had a duty to protect an inmate from violence at the hands of other inmates. *See Farmer v. Brennan*, 511 U.S. 825, 833 (1994). However, in *Estate of Ford v. Ramirez-Palmer*, 301 F.3d 1043, 1049 (9th Cir. 2002), the Ninth Circuit considered the interaction between an Eighth Amendment failure to protect claim and qualified immunity, recognizing that the subjective portion of the test "does not fit easily with the qualified immunity inquiry." The Ninth Circuit observed that:

> [A] reasonable prison official understanding that he cannot recklessly disregard a substantial risk of serious harm, could know all of the facts yet mistakenly, yet reasonably, perceive that the exposure in any given situation was not that high. In these circumstances, he would be entitled to qualified immunity.

*Id*. at 1050. Relevant to the inquiry is the fact that "neither *Farmer* nor subsequent authorities has fleshed out at what point a risk of inmate assault becomes sufficiently substantial for Eighth Amendment purposes." *Id*. at 1051. (citations and internal quotations omitted). Thus, it may not be clear to a reasonable official when the risk of harm from a tense inmate situation changes from "*a* risk of *some* harm to a *substantial* risk of *serious* harm." *Id*. (emphasis in original).

Here, the critical issue is whether, taking the facts in the most favorable light to the Plaintiff, a reasonable prison official in Defendant Shaulis's situation would known that transferring Plaintiff to LCC subjected him to a substantial risk of serious harm. Beyond Plaintiff's assertion in the May 24 Request Form that he had enemies at LCC that would act violently toward him, the record contains no other details going to the magnitude of the risk of harm faced by Plaintiff. Because the point at which a risk to an inmate becomes a substantial risk of serious harm for Eighth Amendment purposes is ill-defined and because Defendant Shaulis's actions fall into this hazy area, he is entitled to qualified immunity. *Brosseau v.*

11

*Haugen*, 543 U.S. 194, 201 (2004). Thus, summary judgment is appropriate as to Count I.[6]

## IV. RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that the District Judge enter an Order **GRANTING** Defendants' Motion for Summary Judgment (Doc. #37).

**IT IS FURTHER RECOMMENDED** that the District Judge enter an Order **DENYING AS MOOT** Defendant Baca's Motion for Summary Judgment (Doc. #49).

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, specific written objections to this Report and Recommendation within fourteen (14) days of receipt. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1), Fed. R. App. P., should not be filed until entry of the District Court's judgment.

DATED: February 11, 2010.

_____
UNITED STATES MAGISTRATE JUDGE

---

[6] The court does not find it necessary to consider the remaining defense raised by Defendants at this time.